IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| <u>DAVID RIBOT, *et al. v.*</u> <br> <u>FARMERS SERVICES, LLC, FARMERS</u> <br> <u>INSURANCE EXCHANGE and 21ST</u> <br> <u>CENTURY INSURANCE COMPANY</u> <br><br> Edward W. Bergmann, <br><br>        Respondent, <br><br>     v. <br><br> David Ribot, Perry Hall, Jr., Deborah Mills, <br> Anthony Butler, Jennifer Butler, Jonathan <br> Luna, Rita Dunken and Lois Barnes, <br><br>        Petitioners. | ) <br> ) <br> ) <br> ) Case No. <br> ) <br> ) Master Docket No. CV-11-02404 DDP (FMOx) <br> ) (U.S. Dist. Court, Central District of California) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

<u>**MOTION TO QUASH**</u>
<u>**SUBPOENA SERVED ON EDWARD W. BERGMANN**</u>

Respondent Edward W. Bergmann ("Bergmann"), by and through his attorneys, Seyfarth Shaw LLP, pursuant to Federal Rule of Civil Procedure 45(c)(3), hereby moves to quash the June 22, 2012 subpoena in the above-captioned action naming him as the witness to be deposed pursuant thereto. In support of his motion, Bergmann states as follows:

<u>**INTRODUCTION**</u>

1. This subpoena is related to the case of *David Ribot, et al. v. Farmers Services LLC, Farmers Insurance Exchange, and 21st Century Insurance Company*, Case Number CV-11-02404 DDP (FMOx), pending in the Central District of California. The *Ribot* case is a putative collective and class action, purportedly brought on behalf of current and former employees of Defendants Farmers Services LLC, Farmers Insurance Exchange, and 21st Century Insurance Company (collectively, "Defendants") who held positions as customer service

1

representatives in call centers located in California, Kansas, Texas, Michigan, and Oregon. The plaintiffs in *Ribot* allege claims seeking unpaid wages, overtime compensation, liquidated damages, interest, penalties, attorneys' fees and costs under the Fair Labor Standards Act and/or the laws of California, Kansas, Texas, Michigan, and Oregon. These claims primarily concern Plaintiffs' allegations that customer service representatives performed work off the clock. (Declaration of Megan Troy ("Troy Decl.") ¶ 2, attached hereto as Exhibit 1).

2.  In 2009, the U.S. Department of Labor commenced an investigation (the "DOL Investigation") into allegations that customer service representatives performed work off the clock. Bergmann, an attorney with Seyfarth Shaw LLP, represented the applicable employers in connection with the DOL Investigation. In 2011, with the advice and counsel of Bergmann, a settlement with the DOL was reached. This settlement covered a portion of the claims now alleged in *Ribot*. (Troy Decl. ¶ 3).

3.  On or about June 22, 2012, Plaintiffs served a subpoena on Bergmann, requesting that he appear for deposition on July 10, 2012. (A true and correct copy of the June 22, 2012 subpoena to Bergmann is attached to the Troy Decl. as Exhibit A.)

4.  Dean A. Martoccia, an attorney representing Defendants, had several telephone conversations with Laureen F. Bagley, an attorney for Plaintiffs, in which they discussed Plaintiffs' subpoena to Mr. Bergmann. Ms. Bagley indicated that she wished to question Mr. Bergmann regarding the DOL Investigation and settlement thereof. During a telephone call on July 5, 2012, Mr. Martoccia explained the basis for Bergmann's planned Motion to Quash, including that the purported areas of testimony were precluded by the attorney-client and work-product privileges and because they relate to protected compromise offers and negotiations. Ms. Bagley declined to withdraw the subpoena. (Troy Decl. ¶ 5).

5. In the course of the *Ribot* litigation, Defendants have already produced to Plaintiffs documents relating to the resolution of the DOL Investigation. Plaintiffs' attempt to now depose the attorney who represented the applicable employers in connection with the DOL Investigation and settlement are highly irregular and amount to harassment. Plaintiffs have not attempted to obtain properly-discoverable deposition testimony from other parties to the *Ribot* litigation, such as Defendants themselves. (Troy Decl. ¶ 4).

6. The subpoena is improper because it seeks the discovery of information that is privileged. In addition, because Plaintiffs' subpoena seeks only protected information, it is not likely to lead to the discovery of admissible evidence and is therefore unduly burdensome. Finally, this attempt to depose an attorney regarding privileged information is harassing, and Bergmann is not the appropriate witness from whom to obtain any properly-discoverable information, to the extent any exists that has not already been produced. Therefore, the subpoena should be quashed.

## ARGUMENT

**I.    STANDARD OF LAW**

7. Federal Rule of Civil Procedure 45 empowers courts to quash subpoenas that require the disclosure of privileged or other protected matters. Fed. R. Civ. P. 45(c)(iii). The rule also allows courts to quash unduly burdensome subpoenas. Fed. R. Civ. P. 45(c)(iv). In order to survive a motion to quash, a subpoena must be reasonable under the circumstances. *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004) (subpoena quashed as burden of compliance with subpoena outweighed the probative value of discovery sought). The threshold for showing reasonableness is heightened when a subpoena is directed to a non-party. *Davis v. City of Springfield*, No. 04 C 3168 and consolidated case No. 07 C 3096, 2009 U.S. Dist. LEXIS 26806 (C.D. Ill. Apr. 1, 2009) (granting motion to quash a subpoena for

documents served on a non-party, and stating "non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection") (*citing Patterson v. Former Chicago Police Lt. Jon Burge*, No. 03 C 4433, 2005 U.S. Dist. LEXIS 1331, at * 5 (N.D. Ill. Jan. 6, 2005)).

8. Third parties are entitled to greater protection than parties during discovery; thus, mere relevance is not enough to justify compelling production of information. *See Bond v. Utreras*, No. 04 C 2617, 2006 U.S. Dist. LEXIS 46279, at *11 (N.D. Ill. June 27, 2006); *Ramirez v. Palisades Collection, LLC*, No. 07-c-3840, 2008 U.S. Dist. LEXIS 112272, at * 9 (N.D. Ill. Jan. 7, 2008). Accordingly, courts balance the burden of compliance against the benefits of production. *See Northwestern Mem. Hosp.,* 62 F.3d at 927.

9. In order to obtain discovery from a third party such as Bergmann, Plaintiffs must show that they are unable to acquire the information from other, more convenient sources. *Ramirez*, 2008 U.S. Dist. LEXIS 112272, at * 9-10. Because they have not attempted to do so, the subpoena on Bergmann amounts to an effort to harass and inconvenience both him and Defendants. *In the Matter of The Heartland Inst.*, No. 11 C 2240, 2011 U.S. Dist. LEXIS 51304, at *12-13 (N.D. Ill. May 13, 2011) ("the record reflects that Plaintiffs' attempt to obtain the information from Third Parties' is not the least intrusive means of obtaining such information and borders on harassment"). Plaintiffs have not used the least intrusive means of obtaining the information they seek and have not exhausted their options to acquire such information from proper sources, including the defendants to the *Ribot* litigation.

10. While the Federal Rules allow broad discovery, the right to discovery is not unlimited. *See generally Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Federal Rules limit discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . .

Fed. R. Civ. P. 26(b)(2); *see also* Fed. R. Civ. P. 45(c)(3)(A)(iv) (authorizing court to quash a subpoena which "subjects a person to undue burden").  Here, the discovery sought is unreasonably cumulative and duplicative, in that Defendants have already produced to Plaintiffs documents relating to the resolution of the DOL Investigation.  Moreover, because the subpoena seeks privileged and inadmissible information, it is clearly improper, and the burden of compliance clearly outweighs any potential benefit.

**II.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT SEEKS INFORMATION PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE AND/OR WORK-PRODUCT DOCTRINE**

    **A.    The Information Sought By Plaintiffs Is Protected By The Attorney-Client Privilege**

11.    Plaintiffs should not be permitted to depose Bergmann regarding discussions that he had with his clients in connection with his representation of them regarding the DOL Investigation.  Federal law extends the attorney-client privilege to all communications about "legal subjects."  *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003); Fed. R. Evid. 501.  Bergmann's consultations with his clients about the DOL Investigation, in his capacity as their attorneys, undoubtedly constituted communications about "legal subjects."  *See Johnson v. Rauland-Borg Corp.*, 961 F. Supp. 208, 211 n.5 (N.D. Ill. 1997) (noting the attorney-client privilege may be applied "where legal advice of any kind is sought"); *see also Scurto v. Commonwealth Edison*, Case No. 97 C 7508, 1999 WL 35311, at *1 (N.D. Ill. Jan. 11, 1999).

12. Because legal advice concerning the DOL Investigation was sought from Bergmann in his capacity as an attorney and in confidence, any discussions regarding said advice falls within the attorney-client privilege and is protected from disclosure.

### B. Information Sought By The Plaintiffs Is Protected By The Work-Product Doctrine

13. Plaintiffs should not be permitted to have Bergmann testify as to work he performed and documents he created on behalf of his clients regarding the DOL Investigation. Not only would all such information be covered by the attorney-client privilege, but it encompasses information contained in documentation created in connection with the DOL Investigation that is protected by the work-product doctrine. Federal law controls whether information sought by Plaintiffs is protected by the work-product doctrine. Fed. R. Civ. P. 26(3). The Supreme Court established the work-product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947). There, the Court said that it is "essential that a lawyer work with a certain degree of privacy," and if an attorney's work was not afforded a degree of privacy, "much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests and the cause of justice would be poorly served." *Id.* at 511. The Supreme Court has repeatedly reaffirmed the "strong public policy" behind the work-product doctrine, which was incorporated into Fed. R. Civ. P. 26(b)(3). *E.g. United States v. Nobles*, 422 U.S. 225, 236-240 (1975); *Upjohn Co. v. United States*, 449 U.S. 383, 397-398 (1981).

14. The work-product doctrine is "distinct from and broader than the attorney-client privilege," although it is limited to documents prepared in connection with, or anticipation of,

litigation. *Nobles*, 422 U.S. 225, 238 n.11; *Scurto*, 1999 WL 35311, at *2. Litigation does not need to be ongoing or imminent for the work-product doctrine to apply. Instead, because "prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced," the test of whether a document was prepared in anticipation of litigation is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *See Sawgrass Sys. v. BASF Aktiengesellschaft*, No. 99-CV-70242-DT, 1999 U.S. Dist. LEXIS 9437 at *10 (E.D. Mich. Feb. 26, 1999), *quoting* 8 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2024 (2d ed. 1994).

15. Any and all work performed by Bergmann with respect to the DOL Investigation was work done to aid in an active matter being pursued by the DOL, under the threat of possible litigation. All such work would have been limited to legal advice given for the purpose of combating the DOL's legal claims and reaching the most advantageous possible settlement. Thus, any and all documents and information related to work performed by Bergmann in connection with the DOL investigation is "work prepared or obtained because of the prospect of litigation." *Sawgrass Sys.*, 1999 U.S. Dist. LEXIS 9437 at *10. All such documents and information are, therefore, protected by the work-product doctrine.

### III. THE SUBPOENA IS INTRUSIVE AND HARASSING

16. Courts acknowledge that the deposition of an opposing counsel "provides a unique opportunity for harassment." *Marco Island Partners v. Oak Development Corp.,* 117 F.R.D. 418, 420 (N.D. Ill. 1987)(motion to quash deposition subpoena to attorney granted; deposition would place undue burden on party, and any non-privileged information could be gathered from other sources). For this reason, courts historically have looked with disfavor on attempts to depose opposing counsel, based on the belief that such depositions are "disruptive of

7

the adversarial process and harmful to the standards of the legal profession and entail a high risk of implicating opinion work product." *Caterpillar, Inc. v. Friedmann,* 164 F.R.D. 76, 78 (D. Or. 1995).

17. Plaintiffs have not sought to obtain any properly-discoverable deposition testimony relating to the DOL Investigation from the defendants in the *Ribot* litigation, but instead seek to harass Bergmann and Defendants by pursuing privileged information by means of the instant subpoena. The subpoena should be quashed because Plaintiffs have not demonstrated they are unable to acquire the information from other, more convenient sources, and because Defendants have already produced to Plaintiffs documents relating to the resolution of the DOL Investigation. *Ramirez*, 2008 U.S. Dist. LEXIS 112272 at * 9-10; *Heartland Inst.*, 2011 U.S. Dist. LEXIS 51304 at *12-13 ("the record reflects that Plaintiffs' attempt to obtain the information from Third Parties is not the least intrusive means of obtaining such information and borders on harassment").

**IV. THE SUBPOENA SEEKS INFORMATION THAT IS PRIVILEGED OR INADMISSIBLE AND IS THEREFORE UNDULY BURDENSOME**

18. In addition to infringing upon the attorney-client privilege and the work-product doctrine, the subpoena should also be quashed because it seeks non-discoverable and inadmissible evidence. Apart from the privileged information sought that is discussed above, the subpoena seeks testimony from Bergmann regarding settlement discussions with the DOL. However, pursuant to Federal Rule of Evidence 408, information concerning compromise offers and negotiations is inadmissible.

19. Because the subpoena seeks privileged and inadmissible evidence, it places an undue burden on Bergmann, a non-party who would be required to attend a deposition for the sole purpose of being instructed not to answer improper questions. "Non-party status is a

significant factor a court must consider when assessing undue burden for the purpose of a ruling on a motion to quash a Rule 45 subpoena." *United States ex rel Tyson v. Amerigroup Ill., Inc.*, No. 02 C 6074, 2005 U.S. Dist. LEXIS 24929, at * 4 (N.D. Ill. Oct. 21, 2005).

20. Importantly, Rule 45(c)(1) "places a duty upon those parties that issue subpoenas to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "the Federal Rules were not intended to burden a non-party with a duty to suffer excessive or unusual expenses in order to comply with a subpoena." *Amerimax Real Estate Partners, Inc. v. Re/Max Int'l, Inc.*, No. 05 C 5300, 2008 U.S. Dist. LEXIS 86970 at *4-5 (N.D. Ill. Aug. 5, 2008) (internal citations omitted). Indeed, "Rule 45(c)(2) protects non-parties to litigation from significant expense resulting from compliance with a subpoena." *Id.* Requiring Bergmann to sit through an unnecessary and improper deposition is clearly an undue burden and expense, especially when Plaintiffs are clearly seeking privileged and inadmissible testimony, and since Defendants have already produced to Plaintiffs documents relating to the resolution of the DOL Investigation.

WHEREFORE, Bergmann respectfully requests that the Court quash the subpoena served on Bergmann.

                                      Respectfully submitted,

                                      SEYFARTH SHAW LLP

                                      By_____/s/ Megan Troy_____
                                                 One of Its Attorneys

Megan Troy
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000 (telephone)
(312) 460-7000 (facsimile)
July 9, 2012

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **MOTION TO QUASH SUBPOENA SERVED ON EDWARD W. BERGMANN** to be served upon:

> Laureen F. Bagley
> Sloan, Bagley Hatcher & Perry Law Firm
> 101 East Whaley Street
> Longview, Texas 75601

via electronic mail and via FedEx, on this 9th day of July 2012.

_____/s/Megan E. Troy_____